MICHAEL FITZGERALD, Appellant, *v.* THE SUPREME COUNCIL OF THE
CATHOLIC MUTUAL BENEFIT ASSOCIATION, Respondent.

*Life insurance policy — false answers in an application, when they are not war-
ranties — representations and warranties distinguished.*

Where answers to questions contained in the application upon which a policy of
life insurance is issued are made warranties, their falsity constitutes a complete
defense to an action upon the policy, notwithstanding the fact that the false
answers were not material to the risk and were made in good faith; if, how-
ever, such answers are merely representations, the insurance company, in
order to defeat a recovery, must prove that the false answers were made
fraudulently or with intent to deceive, or that they were material to the risk.

Statements made by the insured, not contained in the policy of insurance or
referred to in it, will not be held to be warranties.

An application for a policy of insurance required the insured to state as far as
he knew the facts in regard to certain questions propounded to him therein,
and was followed by an agreement, made a part of the application, which
stated "that the foregoing application and this declaration, together with the
answers and applications given to the various questions in form 'A' and 'B'
indorsed hereon, shall form the exclusive and only basis of agreement between
the above-named applicant and the Catholic Mutual Benefit Association (the
insurance company), and that if any misrepresentations or fraudulent or untrue
answers or statements have been made, or if any facts which should have been
stated to the association have been suppressed therein, * * * that then in
either event such agreement shall become null and void." The medical exam-
iner's report, which also contained a number of questions submitted to the
insured, provided: "And I agree that should I be convicted of having will-
fully made any misstatements or concealed any known facts, such misstatements
or concealment of facts shall be deemed evidence of fraud on my part, and
shall, from date of said conviction, * * * render all obligations of said
association to me null and void." No allusion to the application or medical
examiner's report, or to the statements contained therein, was made in the
policy.

*Held,* that the statements of the insured contained in the application and the
medical examiner's report were not required to be absolutely true, but only to
be made in good faith and in accordance with his best recollection and knowl-
edge at the time, and that such statements must be regarded as representations
merely and not as warranties.

APPEAL by the plaintiff, Michael Fitzgerald, from a judgment of
the Supreme Court in favor of the defendant, entered in the office
of the clerk of the county of Oswego on the 21st day of January,
1898, upon the verdict of a jury rendered by direction of the court.

The action was commenced on the 8th day of June, 1896, to

recover upon a certificate or policy of insurance bearing date on the 5th day of October, 1894, which was issued by the defendant to one Francis Fitzgerald. The certificate was in the words and figures following:

"No. 53,320.        SUPREME COUNCIL        $2,000.
OF THE
CATHOLIC MUTUAL BENEFIT ASSOCIATION.

"This certificate, issued by the authority of the Supreme Council of the Catholic Mutual Benefit Association, witnesseth: That Brother Francis A. Fitzgerald is a member of St. Stephen's Branch No. 76 of said association, located at Oswego City, in the state of New York, is entitled to all the rights and privileges of membership in the Catholic Mutual Benefit Association, and to participate in the Beneficiary Fund of the association to the amount of Two Thousand Dollars, which sum shall at his death be paid to his brother, Michael Fitzgerald, two thousand dollars. This certificate is issued upon the express condition that said Francis Fitzgerald shall in every particular, while a member of said association, comply with all the laws, rules and requirements thereof.

"*In Witness Whereof*, the Supreme Council of the Catholic Mutual Benefit Association has caused this to be signed by its supreme president and supreme recorder, and the seal thereof to be attached this fifth day of October, one thousand eight hundred and ninety-four.

"Attest: C. J. HICKEY, *Supreme Recorder.*

[L. S.]        "J. S. McGARRY, *Supreme President.*

"We, the undersigned, president and recording secretary of St. Stephen's Branch No. 76, do hereby countersign this certificate and attach the seal of this Branch hereto, rendering the same valid and in full force this 25th day of October, 1894.

"Attest: JAS. H. KANE, *Recording Secretary.*

[L. S.]        "PETER RABY, *President.*"

Such certificate was issued pursuant to an application in writing for membership in the association of the defendant, signed by the insured on the 30th day of August, 1894. It was made upon a blank form furnished by the defendant, and among other things the insured was required to make answer to a large number of questions, which were printed in said application, relating to his residence, his

age, religion, habits, physical condition, etc., and he was among other things required to make answer to the following question :

" State, so far as you know, what was the age at death, cause of death, duration of final illness and state of previous health of each of the following persons, if deceased? What is the age and present state of health of each of them, if now living?"

The answers to such questions, so far as material to the issues in this case, were contained in the following form or schedule, and were as follows :

| | Age if living. | Condition of health. | Age at death. | Cause of death. | How long sick. | Previous health. |
|---|---|---|---|---|---|---|
| How many brothers have you had? | 6 4 32 30–21–19 | Very good. | 2 dead 23–25 | R. R. accident. Relapse typhoid fever. | 5 days. 3 weeks. | Very good. " " |
| How many sisters have you had? | 1 24 | | | | | |

On the reverse side of said application are a large number of printed questions, supposed to be propounded by the medical examiner of the defendant, and to be answered by the insured, which questions also relate to the physical condition of the insured, past and present, his habits of life, etc.

Then follows the agreement, which is a part of such application, and, so far as is important, is as follows :

" The applicant for membership hereby declares that he is not now afflicted with any disease or disorder * * * and that the foregoing application and this declaration, together with the answers and explanations given to the various questions in form ' A ' and ' B ' endorsed hereon, shall form the exclusive and only basis of the agreement between the above named applicant and the Catholic Mutual Benefit Association, and that if any misrepresentations or fraudulent or untrue answers or statements have been made, or if any facts which should have been stated to the association have been suppressed therein, * * * that then in either event such agreement shall become null and void, and all moneys which shall have been paid shall be forfeited to the association for its sole use and benefit."

Upon the same day, August 30, 1894, the insured made answer to a large number of questions, twenty-two in number, covering substantially the same ground as those answered by him in the applica-

tion, in a paper known as the medical examiner's report. The questions and answers involved in this action were the same in both papers. After such questions and answers in the medical examiner's report follows the following agreement, which was also signed by the insured August 30, 1894:

"AGREEMENT.

"I, Francis A. Fitzgerald, having made application for membership in the C. M. B. A., do hereby agree that compliance on my part with all the laws, rules, regulations and requirements of the C. M. B. A. now in force, or that may hereafter be enacted by said association, is the express condition upon which I am to be entitled to participate in the beneficiary fund in the amount named in the constitution and laws of the association. Provided that the amount paid to the person or persons named as beneficiaries in my application and medical examiner's report shall not at any time exceed the sum of two thousand dollars, and to have and enjoy all the other benefits and privileges of said association. And I hereby certify that the answers made by me to the questions propounded by the medical examiner of branch No. 76 of the city of Oswego, which are hereunto attached and form a part thereof, are true. And I hereby agree that the above statement shall form the basis of the contract between myself, my heirs and assigns of the first part, and of the C. M. B. A., of the second part. * * * I further agree that should my death be caused by or through intemperance or any illegal act of my own, all my right, title and interest in the beneficiary shall revert to the association. And I agree that should I be convicted of having willfully made any misstatements or concealed any known facts, such misstatements or concealment of facts shall be deemed evidence of fraud on my part, and shall from date of said conviction sever my connection with and constitute expulsion from the association, and render all obligations of said association to me null and void.

"Dated at city of OSWEGO, state of New York, this 30th day of *August,* 1894.

"Signature of applicant (full name)

"FRANCIS A. FITZGERALD.

"Signed in the presence of

"C. A. SHERIDAN, M. D., *Medical Examiner.*"

The defense in this action is based solely upon the ground that the insured stated in his application for insurance, and also in the report of the medicial examiner, both of which he signed, that he had had only six brothers, whereas, in fact, he had had seven brothers; that he stated that only two of such brothers were dead, when in fact three of such brothers were dead, and that he also stated that he had had only one sister, when in fact he had had two sisters, and that he did not state that one sister was dead.

It was claimed upon the trial that such answers were warranties; that they were untrue, and that, therefore, the plaintiff cannot recover. Every other question was withdrawn from consideration by the court by the statement or stipulation made in open court by defendant's counsel. He stated in substance that the only defense which was urged was that the statements of the insured above quoted, referring to his brothers and his sisters, were false, and that that fact having been established, the defendant was entitled to judgment dismissing the complaint, regardless of whether such statements were made fraudulently or were made with intent to deceive the defendant, and without reference to whether such statements were material to the risk or otherwise. The learned trial justice decided the case, and directed a verdict for the defendant upon the issue thus presented.

The insured died on the 1st day of September, 1895. The plaintiff is the beneficiary named in the certificate of insurance, and brings this action to recover the amount of such certificate.

*L. C. Rowe* and *D. P. Lester*, for the appellant.

*C. J. Church*, for the respondent.

McLENNAN, J.:

Assuming that the answers of the insured to the questions in the application, and in the medical examiner's report above referred to, were false and untrue, it becomes important to determine whether such answers were warranties or misrepresentations only. If such answers were warranties, then clearly no recovery can be had, and it is of no consequence that the answers were immaterial, or that they were made in good faith. A complete defense is established by proving the answers and their falsity. (1 May Ins. § 156.)

" A breach of a warranty is equally fatal whether the thing war-

ranted be material or immaterial, or was or was not intended, or was or was not the fault of the insured, or was made not by the person insured, but by those employed by him. And warranties must be not only substantially but strictly complied with." (2 Pars. Cont. [5th ed.] 397; Angell Ins. § 140 ; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 136 ; Bacon Life Ins. § 194.)

If, however, the answers above referred to were representations merely, it is equally well settled that, in order to defeat a recovery, in addition to proving that the answers were made and that they were untrue, the defendant must prove either that they were made fraudulently or with intent to deceive, or that they were material to the risk. (1 May Ins. § 181, and cases cited ; Pars. Cont. 401, 405.)

Bacon in his work on Insurance (§ 206) says : " A false representation, unlike a false warranty, will not operate to vitiate the contract or avoid the policy, unless it relates to a fact actually material or clearly intended to be made material by the agreement of the parties. It is sufficient if representations be substantially true."

The rule is well settled that courts will not hold that statements made by the insured in a policy, or in any other paper connected with it, are warranties, unless such is the clear intention of the parties.

It was held in the case of *Darrow* v. *Family Fund Society* (116 N. Y. 537) : " For the purpose of upholding a contract of insurance its provisions will be strictly construed as against the insurers; when its terms permit more than one construction, that will be adopted which supports its validity. It is only when no other is permissible by the language used that a construction which works a forfeiture will be given to it."

As was said in the case of *Fitch* v. *American Popular Life Insurance Co.* (59 N. Y. 572), per RAPALLO, J. : " These policies are provisions made usually by persons of slender means for the benefit of their families in case of death. They sometimes devote their small savings for many successive years to paying the premiums. To justify us in holding that all the answers given to the multitude of questions asked in the case before us are warranties, and that a mistake or unintentional omission as to any of them should avoid the policy, the clearest, most unequivocal and unqualified language should be employed in the policy and conditions."

In *Dilleber* v. *Home Life Ins. Co.* (69 N. Y. 256) the court say (at p. 263) : " Warranties in policies of insurance are strictly construed. They will not be extended to include anything not necessarily implied in their terms. (*Loud* v. *Ins. Co.*, 2 Gray, 221 ; *Campbell* v. *Ins. Co.*, 98 Mass. 381 ; *Hide* v. *Bruce*, 3 Douglas, 213.)" (*Moulor* v. *American Life Ins. Co.*, 111 U. S. 335.)

A warranty as applied to life insurance is defined by Bacon (§ 194) as : " A stipulation inserted in writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. The stipulation is considered to be on the face of the policy, although it may be written in the margin, or transversely, on a subjoined paper referred to in the policy."

This definition was approved in *Ripley* v. *Ætna Ins. Co.* (30 N. Y. 136).

Lord MANSFIELD said in *Pawson* v. *Watson* (1 Cowp. 785) that in order to make written instructions valid and binding as a warranty, they must undoubtedly be inserted in the policy.

Bunyon in his work on Life Assurance (34) says : " In order to make any statements binding as warranties they must appear upon the face of the instrument itself, by which the contract of insurance is effected : they must either be expressly set out or by inference incorporated in the policy. If they are not so they are not warranties, but representations." (See, also, 1 May Ins. § 156.)

A representation is defined by May on Insurance (Vol. 1, § 181) as follows : "A representation is a statement incidental to the contract, relative to some fact having reference thereto, and upon the faith of which the contract is entered into. If false and material to the risk the contract is avoided. Such a false statement is termed in insurance a misrepresentation, which has been well defined to be the statement of something as a fact which is untrue in fact, and which the insured states knowing it to be untrue, with the intent to deceive the insurers, or which he states positively as true without knowing it to be true and which has a tendency to mislead — such fact in either case being material to the risk and adverse to the insurers."· (*Daniels* v. *Hudson River Fire Ins. Co.*, 12 Cush. [Mass.] 416, and cases cited.)

Bacon, in his work on Life Insurance (Vol. 1, § 206), says : " A representation is not, strictly speaking, a part of the contract of

insurance or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it.  *  *  *  It is sufficient if representations be substantially true. They need not be strictly nor literally true." (Arnould Ins. § 182 ; *Alabama Gold Life Ins. Co.* v. *Johnston*, 80 Ala. 467.)

In the case at bar the alleged false statements of the insured do not appear in the policy and are not in any manner referred to in it, nor are the papers in which they are contained, to wit, the application and medical examiner's report, in any way referred to in the policy, and no allusion is made to such statements or to such papers. The certificate or policy of insurance in and of itself formed a complete contract between the parties. In order to establish his cause of action the plaintiff was only required to prove the execution and delivery of the policy and the death of the insured. (*Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 191.)

Assuming that in the application and medical examiner's report (which were signed by the insured nearly two months prior to the time the policy was issued), it is agreed that the statements therein contained are warranties, and that they shall form the basis of the contract between the parties, then the simple question is presented whether such an agreement is sufficient to incorporate such statements in the policy, make them a part of it, and give to them the force and effect of warranties, although not referred to in the policy, or whether, notwithstanding the language used in such agreements, such statements continued and remained representations only.

In the case of *Jefferson Ins. Co.* v. *Cotheal* (7 Wend. 72) the court say : " The doctrine of warranty in the law of insurance is one of great rigor, and frequently operates very harshly upon the assured.  *  *  *  A warranty, therefore, is never created by construction. It must either appear in express terms, affirmative or promissory, or must necessarily result from the nature of the contract. 1 Marsh. 347 to 350 ; Phil. on Ins. 112, 124. It must, therefore, appear on the face of the policy in order that there may be unequivocal evidence of a stipulation, the non-compliance with which is to have the effect of avoiding the contract.  *  *  *  No case has been referred to in which this rule has been relaxed except in relation to the printed proposals of the underwriters accompanying and always attached to the policy. It has been held that the

conditions specified in those proposals, to be performed by the assured, are conditions precedent, and are to be construed as warranties incorporated in the policy;   *   *   *   but these printed proposals are always referred to by the policy, and it is in express terms declared that the policy is made and accepted in reference to them. They are as much, therefore, a part of the policy as though they were printed or written on its margin, and no case has been given to the court in which any other document has been held to have been so incorporated into the policy by reference as to give to its contents the effect of a warranty or a condition precedent on the part of the assured. And I am not disposed to lead the way in the extension of this harsh and rigorous doctrine."

In the case of *Pawson* v. *Watson (supra)* it was said that any representations or instructions not referred to in the policy are not to be treated as warranties.

In the case of *Snyder* v. *Farmers' Ins. & Loan Co.* (13 Wend. 92) the decision in the case of *Jefferson Ins. Co.* v. *Cotheal (supra)* is cited with approval, and the court say: " ' In determining what shall constitute a warranty and what shall be a representation merely, the general principle seems to be well settled that an express warranty must appear on the face of the policy, and that any instructions for insurance, unless inserted in the instrument itself, do not amount to a warranty.' *  *  * It is not necessary to deny that a separate paper may by express stipulation be made part of the policy, but there is no such reference in the present policy as to authorize the court to give the survey the force of a warranty."

In the case of *Owens* v. *Holland Purchase Ins. Co.* (56 N. Y. 565) the head note is as follows: " No part of an application for insurance can be regarded as a warranty unless made so by the contract of insurance. The parts not adopted and made the basis of the contract so as to constitute warranties are to be treated as representations not prejudicing the rights of the insured, unless they are material to the risk, are untrue and were not made in good faith."

In that case the application for insurance concluded as follows : " And the applicant hereby covenants and agrees that the foregoing valuation, description and survey are true and correct, and they are submitted as his warranty and a basis for the desired insurance."

The language thus quoted is even more pointed and emphatic

than any language contained in the agreements which were made parts of the application and medical examiner's report signed by the insured in this case, yet the court (at p. 572), per GROVER, J., says: "Yet no part of this application can be regarded as a warranty, unless made so by the contract of insurance. To do this, the same stipulations must be inserted in the contract, or, if not so, the paper containing them must be referred to and adopted, so as to become a part of the contract."

In the case of *Vilas* v. *New York Central Ins. Co.* (72 N. Y. 590) it was held that the policy did not with sufficient definiteness refer to the application, and that the statements contained in such application were representations merely. At page 592 the court say: "To make an application constitute a part of a policy of insurance, there should be some reference to it which evinces that the parties understood and accepted it as such."

In the case of *Boehm* v. *Commercial Alliance Life Ins. Co.* (62 N. Y. St. Repr. 211) the court say: "There is no doubt about the rule that no statement made to an insurance company as the basis of a contract of insurance can be regarded as a warranty, unless the paper in which it is made is by necessary inference made a part of the contract."

And at page 214 the court further say: "The first thing to be noticed in this case is that the application is not made a part of the policy by anything contained in the policy itself, strictly speaking." That case was affirmed in 88 Hun, 617. (See, also, *Cushman* v. *United States Life Ins. Co.*, 4 Hun, 783.)

In the case of *Foley* v. *Royal Arcanum* (151 N. Y. 196), where the application for insurance contained the following: "I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statement made herein, or to the medical examiner, or any concealment of facts by me in this application, * * * shall forfeit the rights of myself and my family or dependents to all benefits and privileges therein," it was held that the statements contained in such application were warranties, because, as said by the court (at p. 201): "From allusions made in the certificate thereto (to the application), the conclusion is irresistible that it was the intention of the parties to make the warranty and the waiver a part of the contract."

The case of *Clements* v. *Connecticut Indemnity Co.* (29 App. Div. 131), recently decided by this court and relied upon by respondent's counsel, is not in conflict with the proposition that statements contained in the application, or other paper upon which a policy of life insurance is issued, must be referred to in the policy, in order to give them the effect of warranties.   In that case it was declared, in the policy which was issued on the life of Clements, that, " in consideration of the statements, agreements and warranties made in the application " therefor, and that " the application on the faith of which this policy issues is hereby referred to and made part of this contract, and the insured hereby agrees that the answers and statements therein contained are material, and that they are full, complete and true ; that he has verified and adopts as his own each statement, representation and answers* made therein, whether written by him or not, and that statements made to an agent and not therein written shall form no part of this contract."

Concededly, the application and the statements which it contained were made a part of the policy by explicit reference to them, and the decision in that case does not in any manner support the contention of respondent's counsel that the statements of the insured in this case may be regarded as warranties.

In the case of *Breeze* v. *Met. Life Ins. Co.* (24 App. Div. 377), recently decided by this court, also cited by respondent's counsel, the policy which was being considered contained the provision that " in consideration of the answers and statements contained in the printed and written application for the policy, ' all of which are hereby made warranties and are hereby made part of this contract,' and of the payment, etc., the policy was issued," and in that case it was held that the statement made in the application as to the age of the insured was a warranty, and that it having been proven that such statement was false, no recovery could be had.   The decision in that case in no manner supports the defendant's contention.

We think no case can be found in which it has been held that, where the policy of insurance does not in some manner refer to the statements of the insured, or the papers in which such statements are contained, such statements are warranties.

Of course, the rights of the parties in this case are to be deter-

---

\* *Sic.*

mined not only from the policy or certificate, but also from the application, the medical examiner's report and perhaps from oral statements or representations made by the insured, but we think it clear that such statements, not being referred to in the policy of insurance in question, should not be given the force and effect of warranties.

The language of the application and of the medical examiner's report, and the agreement attached to them respectively, signed by the insured, do not make the statements therein contained warranties. In the application the applicant for membership declares that "the foregoing application and this declaration, together with the answers and explanations given to the various questions in form 'A' and 'B' indorsed hereon (which include his answers in relation to his brothers and sisters), shall form the exclusive and only basis of the agreement between the above-named applicant and the Catholic Mutual Benefit Association, and that if any misrepresentations or fraudulent or untrue answers or statements have been made, or if any facts which should have been stated to the association have been suppressed therein, * * * then in either event such agreement shall become null and void."

There is nothing in the agreement above quoted which would justify the court in holding, as a matter of law, that the plaintiff cannot recover, solely because a statement made by the insured in such application is untrue. The words "if any misrepresentations or fraudulent or untrue answers or statements have been made," must be held to be equivalent only to the words if any misrepresentations or fraudulent or *fraudulently* untrue answers or statements have been made. (*Dilleber* v. *Home Life Ins. Co., supra.*) Otherwise, the words "misrepresentations or fraudulent" are superfluous, because the word "untrue" would cover and include all.

In such case it is said by May on Insurance (Vol. 1, § 168): Such declaration cannot be used in the disjunctive. If so used, "the clause which relates to fraudulent concealment and designedly untrue statement is superfluous and unnecessary, because it is only a reiteration *in extenso* of that which is involved in the former clause which requires the particulars to be correct and true;" and the author further says that in such case the construction should be: "If I (the insured) am guilty of any fraudulent concealment or

designedly untrue statement in those answers, the policy shall be null and void."

This proposition is further emphasized by the language of the agreement attached to the medical examiner's report, which agreement in express terms declares that in order to deprive the insured of the benefits provided for in the policy, he (the insured) must be convicted of having willfully made misstatements or concealed known facts. When the agreement which is made a part of the application and the agreement which is made a part of the medical examiner's report are considered in connection with the question propounded in each of said documents, to wit, "State, as far as you know, what was the age at death," etc., to which the answers complained of were given by the insured, we think it clear that such answers cannot be regarded as warranties, and that they cannot be regarded as implying absolute truthfulness, but that, on the contrary, such agreements, when considered in connection with the question propounded, should be held only to mean that the insured was required to answer the question propounded in good faith, honestly, and as he then understood the fact to be.

Many authorities might be cited to the effect that where the meaning or construction is ambiguous, such construction will be given to the language employed as is most favorable to the insured.

As was said in the case of *National Bank* v. *Ins. Co.* (95 U. S. 673): "When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent (a warranty) to any binding contract, the court should lean against that construction which imposes upon the assured the obligations of a warranty. The company cannot justly complain of such a rule. Its attorneys, officers or agents prepared the policy for the purpose, we shall assume, both of protecting the company against fraud and of securing the just rights of the assured under a valid contract of insurance. It is its language which the court is invited to interpret, and it is both reasonable and just that its own words should be construed most strongly against itself."

Considering the language contained in the agreement attached to the application, and also the language contained in the agreement

attached to the medical examiner's report, the conclusion is irresistible that it was not the intention of the parties that the statements therein contained should be warranties, but that they should be regarded as representations merely, and also that when the question propounded is considered, the answers thereto were not intended to imply absolute verity, but that the insured was only called upon to make such answers in good faith, honestly and in accordance with his best recollection and knowledge at the time such answers were made.

It will be observed that, by the question, the answers to which are complained of, the insured is asked to state so far as he knows. In the application one penalty is provided in case the answers to such question are misrepresentations or fraudulent or untrue. In the medical examiner's report another penalty is provided in case, by the answers to the same question, the insured is convicted of having willfully made any misstatements or concealed any known facts.

We think that, under those circumstances, the insured was only required to make such answers as at the time he believed to be true.

Under the evidence and circumstances of this case we think it cannot be said, as a matter of law, that the insured made false or untrue statements regarding his brothers and sisters in the application. As before said, the question propounded was: " State, as far as you know, what was the age at death, cause of death, duration of final illness and state of previous health, of each of the following persons, if deceased. What is the age and present state of health of each of them, if now living ? "

The answers were required to be given in a form or schedule prepared by the defendant. In the first column are the questions, " How many brothers have you had ? How many sisters have you had ? " No answers are made to such questions, but in the next column, which is headed "Age, if living," appear the figures, " 6 4 32; 30-21-19; 1 24." In the next column, which is headed " Condition of health," there are only the words " Very good." In the next column, headed "Age at death," follows, " 2 dead, 23-25," and so on ; " Cause of death," " How long sick," " Previous health," etc.

We think that from those answers it is impossible to say, as a matter of law, that the insured stated that he had had only six

brothers, and that only two of such brothers were dead, or that he had had only one sister. The questions and answers were made ambiguous, uncertain and indefinite by the action of the defendant itself, and it cannot now seek to defeat a recovery because of the apparent discrepancy made by the insured in stating the facts. (*Burleigh* v. *Gebhard Fire Ins. Co.*, 90 N. Y. 220; *Baley* v. *Homestead Fire Ins. Co.*, 80 id. 21; *Higgins* v. *Phœnix Mutual Life Ins. Co.*, 74 id. 9.)

The answers contained in the medical examiner's report are more definite and less ambiguous, but, as has been before seen, it is provided in the agreement signed by the insured, attached to such report, that, in order to deprive him of the rights under the policy issued to him, he must be convicted of having willfully made misstatements or concealed known facts.

The conclusion is reached that the defendant, in order to establish its defense, was called upon to prove, to the satisfaction of a jury, that the statements of the insured were made as claimed; that such statements were untrue and were made fraudulently and with intent to deceive the defendant, or else that such statements, if made, were material to the risk.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur, except WARD, J., not voting.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.