(81 App. Div. 76.)

JENNINGS v. SUPREME COUNCIL, LOYAL ADDITIONAL BEN. ASS'N.

(Supreme Court, Appellate Division, First Department. March 13, 1903.)

1. BENEFIT INSURANCE—HEALTH OF APPLICANT—MISREPRESENTATIONS.

Where, in an action on a benefit certificate, plaintiff claimed that defendant had waived misrepresentations as to insured's health by permitting him to remain in the order after making investigation after he was admitted, whether the evidence on such issue was sufficient to present a question for the jury could not be reviewed on defendant's appeal.

2. SAME—FINDINGS—WEIGHT OF EVIDENCE.

Where insured stated, in an application for insurance, that he had last been attended by a physician in January, 1895, and the court, in an action on the certificate, held such answer a warranty, and the physician who attended him in his last illness testified that in February, 1895, he visited insured professionally, and made 11 visits between the 1st and 19th of that month, which evidence was uncontradicted, except by plaintiff's statement that she did not see the physician administer any medicine to insured, or do anything in connection with him during the month of February, a finding that deceased was last attended by a physician in the month of January, 1895, was contrary to the weight of evidence.

3. SAME—INTENTION OF INSURED.

Where answers in an application for insurance were warranties, the good faith or intention of insured in making such answers was immaterial.

---

¶ 3. See Insurance, vol. 28, Cent. Dig. § 568.

**4. SAME—PRIOR APPLICATIONS.**

In May, 1895, insured, with others, applied to the supreme council of defendant association for the organization of a local council, in which each of the signers agreed to take insurance. A physician was commissioned to examine petitioners, and decedent was informed that he could not pass, whereupon both the application and medical examination were retained by the physician until some time after decedent became a member under a subsequent application in which he stated that he had not previously applied for membership. *Held*, that the prior acts of deceased constituted an application, and, the subsequent statement being construed by the court in an action on the certificate as a warranty, a finding that deceased had not applied for membership previous to the subsequent application was against the weight of evidence.

**5. SAME—WITNESSES—PHYSICIANS—PRIVILEGE.**

Where, in an action on a benefit certificate, there was no evidence that a physician was insured's family physician, or that he acquired information concerning insured's health while acting as insured's physician, he was competent to testify that, while he was attending insured's father and mother professionally and other members of the father's household, he observed insured's physical health, and to state what it appeared to be.

**6. SAME—CURING OF ERROR.**

Where one of the principal matters litigated in an action on a benefit certificate was whether insured was in sound health when the certificate was issued, and the greater part of the evidence related to that issue, defendant contending that insured had been a consumptive for years, and must have known of the fact, the admission of the answer to a question by a physician that insured appeared to be a tubercular subject, or anæmic, emaciated, and had a chronic cough, did not cure the erroneous refusal to permit such physician to answer other questions relating to insured's health.

**7. SAME—EVIDENCE—OPINION.**

Where, in an action on a benefit certificate, the examining physician testified that in a conversation with defendant's claim agent he stated that he did not see how the claim could be approved if a medical examination attached to a previous application was a genuine document, plaintiff was not entitled to further prove by the witness that he had changed his mind with reference to the payment of the claim by reason of the fact that defendant's officers had investigated insured's health in his lifetime and had dropped the investigation as of no importance.

**8. SAME—BENEFIT CERTIFICATE—CONSTRUCTION.**

A printed application for benefit insurance required the applicant to state on his honor that the statements made and subscribed were true "to the best of his knowledge and belief." At the end of the application a statement was printed to the effect that the applicant warranted the truthfulness of the statements and agreed that any untrue or fraudulent statements or any concealment of facts therein should forfeit his rights and those of his beneficiary, and at the end of the medical examination insured was required to "warrant the truthfulness of all answers given to the above questions." *Held*, that the answers in such application and medical examination were representations merely, and did not constitute strict warranties.

Appeal from Trial Term, New York County.

Action by Mary W. Jennings against the Supreme Council of the Loyal Additional Benefit Association. From a judgment in favor of plaintiff, and from an order denying motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Smith M. Lindsley, for appellant.

Charles M. Demond, for respondent.

LAUGHLIN, J.   The action is brought to recover the sum of $2,000 upon a beneficiary certificate issued by the defendant on the 11th day of November, 1895, to Charles Hopkins Jennings, who died on the 18th day of February, 1898, after having been admitted to membership in its Star Council No. 44 at Danbury, Conn.   The plaintiff is the widow of the decedent, and in application for membership he designated her as his beneficiary, and, according to the terms of the beneficiary certificate, the beneficiary fund is payable to her.   The defendant contested the claim on account of alleged breaches of warranty, misrepresentations, and fraudulent concealment of facts by Jennings in his application and in the medical examination.   The other material facts were admitted upon the trial, and the only issues litigated were those arising on these affirmative defenses interposed by the defendant.

Before the close of the evidence the court ruled that the answers made by the decedent in the medical examination were warranties of the facts.   At the close of all the evidence a motion was made for a dismissal of the complaint.   The court reserved its decision, and submitted seven questions to the jury for special findings.   Counsel for the defendant excepted to the refusal of the court to grant his motion, and to the submission of such questions.   The court directed a verdict for the plaintiff upon the special findings of the jury.   Neither party asked to go to the jury upon any other question; but the defendant excepted to such direction of a verdict.   The questions which we deem important will be discussed separately.

First.   The plaintiff interposed no reply, but upon the trial she gave evidence tending to show a waiver or estoppel on the part of the defendant from interposing this defense on account of an investigation instituted by the defendant's supreme council in the month following Jennings' admission to membership.   If the defendant in the lifetime of Jennings became aware of all the facts upon which it is now contesting this claim, and acquiesced in his remaining in the order, and continued to receive dues and assessments from him down to the time of his death, undoubtedly it would be deemed to have waived such defense, and would be estopped from interposing the same.   Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644; Titus v. Glens Falls Ins. Co., 81 N. Y. 410; McClure v. Supreme Lodge, 41 App. Div. 131, 59 N. Y. Supp. 764; Morrison v. Wisconsin Odd Fellows Co., 59 Wis. 162, 18 N. W. 13; Bacon on Ben. Soc. §§ 104A, 427, 431, 841, 844.   Upon the trial, however, the court ruled that the evidence offered by the plaintiff was insufficient to establish either a waiver or estoppel.   The evidence being insufficient to establish a waiver or estoppel as matter of law, it does not avail to sustain the judgment; and whether it was sufficient to present a question for the jury may not properly be determined on the defendant's appeal.

The second question submitted to the jury was as follows: "Second. When was the decedent last attended by a physician prior to the 20th day of January, 1895?"   By question No. 14 in the medical examination decedent was asked, "When were you last attended by a physician?" and his answer was, "Last January."   The next ques-

tion, No. 15, was, "For what ailment?" and his answer was, "Cold." According to the undisputed evidence as we find it in the record, the answer to question No. 14, treated as a warranty, was untrue. Dr. Dunham, who attended Jennings in his final illness and made the death certificate, and who apparently was a disinterested witness, testified unequivocally that he attended and prescribed professionally for the decedent in the month of February, 1895, making 11 visits; the first visit on the 1st, and the last on the 19th, day of the month, and that decedent was then sick in bed. The physician was precluded, on objection interposed by counsel for the plaintiff, from disclosing the nature of the disease or ailment from which the decedent was suffering. Another witness, Mrs. Dugan, who was at the time a servant in the family of the decedent, testified that he became ill in January, 1895; that he was confined to the house by illness until the second or third week in February; that Dr. Morgan attended him first, Dr. Osborne later, and Dr. Dunham last, and that Dr. Dunham's attendance extended from about the last of January to about the second week of February. Mrs. Sherman, a next door neighbor, who, however, was not on intimate terms with the family, also gave testimony tending to corroborate, to some extent, that of Dr. Dunham. The only other evidence on this question is the testimony of the plaintiff. Before the evidence was first closed she testified that Dr. Dunham attended her husband at the house where he resided in the month of February, 1895; but she says the doctor did not give any prescription, and she disputes the number of his visits. She, however, clearly and unequivocally admitted that he attended her husband on the 1st day of February, 1895. After the close of the evidence, and the motion for dismissal of the complaint had been argued at length, the court permitted counsel for the plaintiff to call his client and give further evidence on this point. The only material testimony she then gave was that Dr. Dunham did not administer any medicine to her husband, and she did not see him do anything in connection with her husband in the month of February, 1895. The plaintiff did not testify that she was in the presence of her husband all the time from the 1st of February to the 19th, inclusive, or state any facts tending to show that Dr. Dunham could not have attended and prescribed for her husband in February as he testified without her knowledge. It will be observed that she was given every opportunity to controvert the testimony of Dr. Dunham, but she did not withdraw her previous testimony that he had attended her husband in the month of February, 1895. The jury, by their answer to the second question, found that the decedent was last attended by a physician in the month of January, 1895. The court properly instructed the jury that a warranty does not depend upon the intention of the party making it. Counsel for the defendant not only excepted in advance to the court's submitting this question to the jury upon the ground that there was no substantial controversy in the evidence, but he also specifically excepted upon the same ground after it had been submitted, and before the jury retired. The ruling of the court that the answer of decedent to this question was a warranty left no question of good faith or intention to be considered, but merely the plain question of fact

as to when the decedent was last attended by a physician. Dilleber
v. Home Life Ins. Co., 69 N. Y. 256, 25 Am. Rep. 182. This finding
is not only against the weight of the evidence, but contrary to and
unsupported by evidence.

Third. The application on which the decedent was admitted to
membership in the defendant was made on the 10th day of October,
1895, and the medical examination thereunder occurred on the 20th
day of the same month. The third question specially submitted
to the jury was, "Had the deceased at any time prior to the said 20th
day of October, 1895, applied for membership in the Loyal Addi-
tional Benefit Association?" The jury answered this question in
the negative. The applications for membership are made to the Loyal
Additional Benefit Association. One of the questions put to the
decedent in the medical examination was, "Have you ever before
applied for membership in the Loyal Additional Benefit Associa-
tion?" His answer was, "No." In the month of May, 1895, there
was no council of the defendant in Bridgeport, Conn. It appears
that after some inquiries the decedent and 31 others signed a peti-
tion addressed, "To the Supreme Council, Officers and Members
of the Supreme Council of the Loyal Additional Benefit Association,"
in the form required by the constitution and by-laws of the defend-
ant, and upon a blank furnished by it, for leave to establish a subor-
dinate council at that place, to be known as "Phœnicia Council, No.
7, of the Loyal Additional Benefit Association." Upon and pur-
suant to that petition a council was duly instituted, under the name
suggested in the petition, at Bridgeport, on the 7th day of June, 1895.
Upon the blank form of petition there was printed in small type,
just above the signatures, information to members concerning the
fees, dues, and assessments required to be paid, and that a council
could not be instituted with less than 15 members. It was therein
stated, among other things, that each charter member must pay
"two dollars for medical examination, fifty cents for supervising
medical officer's fee." The inference is plain, although it does not
distinctly appear, that formal applications for membership by each
of the petitioners accompanied the petition. It does appear that the
decedent signed an application for membership upon the form in use
by the defendant, but whether this was signed at the time he signed
the petition, or to whom it was delivered or forwarded, does not ex-
pressly appear. Dr. Banks was duly commissioned to examine these
applicants for charter membership, and the application which de-
cedent signed came into the hands of Dr. Banks, but it does not ap-
pear from whom he received it. The decedent subsequently pre-
sented himself to Dr. Banks for examination for admission to the
defendant association. The application and printed questions for
the medical examination were on the same sheet of paper, which,
when folded, formed four pages. The doctor read the questions in
the medical examination to decedent, and wrote his answers thereto,
and then decedent subscribed the same. Dr. Banks informed the
decedent that he could not pass or recommend him for membership.
Both the application and the medical examination were placed in a
pigeonhole in the doctor's desk, and there they remained until some

time after the decedent had become a member of Danbury Council of the defendant, on another application, if not until after his death. It appears to have been the duty of Dr. Banks, in these circumstances, to forward the application and medical examination to the chief medical examiner, but his explanation of his failure to do so is that this was an application for charter membership, and that, instead, he made a verbal report to the secretary of the local council, when instituted, of his rejection of the decedent's application. Counsel for the plaintiff, however, in his cross-examination of the witness Apgar, the legal adviser and examiner of claims for the defendant, brought out the fact that Dr. Banks stated, after the death of Jennings, as the reason for not forwarding the application and medical examination, that Jennings requested him not to make the matter public, as it might injure him if he tried to obtain other insurance. If this application accompanied the petition for leave to institute the council at Bridgeport, and thereby reached the hands of the proper officials of the defendant, and was by them referred to Dr. Banks, it is clear that it constituted an application for membership in the defendant association. The action undoubtedly did not constitute a legal rejection of the decedent; but information as to whether he had been rejected was sought by a separate question in the medical examination, which he also answered in the negative. Even if the application did not accompany the petition, if it was subscribed and delivered to a representative of the defendant by Jennings, with the intention that it should be an application, and was suppressed at the instigation of Jennings, we think it clear that it would constitute an application, within the fair intent and meaning of the question calling for information on that subject. Even if the answer to the question was not a warranty, a question of fact would be thus presented as to whether it was not fraudulently made for the purpose of concealing the fact that the local medical examiner refused to pass favorably upon the decedent's application for membership. But, as has been seen, the court instructed the jury that this constituted a warranty of the fact, and the jury has found that the decedent had not previously applied for membership. Assuming the decedent's answer to the question to be a warranty of the fact, as it was treated by the trial court, we think this finding is against the weight of the evidence.

Fourth. Dr. Osborne, of Pasadena, Cal., was examined as a witness for the defendant by commission. It appeared that he had attended Jennings' father and mother professionally when Jennings resided with them at Southport, Conn., in the year 1895, and that, when making professional visits there in attending other inmates of the household, he noticed and observed the physical health and condition of Jennings, the decedent. He was asked to state fully the appearance of Jennings at those times and the knowledge he acquired concerning his health and physical condition, and to fully describe his health and physical condition, and to state what, if any, disease or diseases, ailment or ailments, he was then afflicted with. This was objected to upon the ground that it appeared that Dr. Osborne was the family physician of the decedent, and the objection was sustained,

and defendant excepted. It did not appear from Dr. Osborne's testimony that he was the family physician, or that the information sought related to any knowledge acquired by him as Jennings' physician. As has been seen, it appeared from the testimony of Mrs. Dugan that Dr. Osborne did attend Jennings professionally in January, 1895. The answer to this question, which was excluded upon the trial, appears in the record as follows: "When called to see other members of the family, and not to Charles H. Jennings professionally, simply observed that he did not have the appearance of a well man, or, rather, of a man in full health." The witness was further asked to state whether Jennings was to his knowledge in good health, and to what extent, and how, he was not in good health, and by what disease or diseases he was at any time afflicted. This was objected to on the trial, and excluded on the same ground, and the defendant excepted. The answer which appears in the record was, "Did not seem to be in good health or sound health; was able to attend to his avocation; did not seem robust; had a cough and expectoration." The witness was then asked, "Did you at any time discover or find evidence of Charles H. Jennings being afflicted with tuberculosis or consumption?" This was objected to upon the trial upon the same ground and excluded, and defendant excepted. The answer was, "From memory only would say that the physical signs indicated that he had tuberculosis or consumption." The witness was then asked, "Did said Charles H. Jennings have a chronic cough, and, if so, when and how long he had such cough? State all facts in relation thereto as far as you know." This was objected to upon the trial upon the same ground, excluded, and defendant excepted. The answer, as shown in the record, was, "Yes, he had a cough while I had known him, frequently coughing and expectorating while in my presence." We think the exclusion of this testimony was error. The burden of showing that the testimony was privileged was upon the plaintiff, who objected thereto. People v. Koerner, 154 N. Y. 355, 48 N. E. 730; Griffiths v. Met. St. Ry. Co., 171 N. Y. 106, 63 N. E. 808; Green v. Met. St. Ry. Co., 171 N. Y. 201, 63 N. E. 958. As has been seen, this was neither shown or attempted to be shown by the examination of Dr. Osborne himself; and it does not appear from his examination, so far as the record discloses, that he ever attended the decedent professionally. It will not do, we think, to rule out the testimony of a physician upon the ground that the evidence is privileged from the mere fact that some other witness has incidentally testified to professional treatment by the physician of the person concerning whose appearance or state of health the inquiry is made. For aught that appears, if the plaintiff had sought to show by the examination of Dr. Osborne that this evidence was privileged, the physician might have denied that he ever treated Jennings professionally. Furthermore, if it appeared that Dr. Osborne had treated Jennings professionally, the only privileged evidence would be the information derived from such professional attendance. It was perfectly competent to show by him what he observed of Jennings and knew of him on other occasions when not attending him professionally. Patten v. U. L. & A. Ins. Association, 133 N. Y. 450, 31 N. E. 342. Moreover,

the first question excluded was confined to what the physician saw and learned of Jennings' appearance and condition at times when he was attending other members of the family, and the answer which was excluded showed that it related to what the witness saw and observed on occasions when he had no professional relations with Jennings. The defendant did obtain a favorable ruling on one question, and in answer to that Dr. Osborne said, "Mr. Charles H. Jennings appeared from observation alone to be a tubercular subject, or anæmic, emaciated, and had a chronic cough." In view of this answer it might be said that the exclusion of the other evidence was not prejudicial error were it not for the fact that one of the principal questions litigated was whether or not Jennings was in sound health at the time he became a member of the defendant association; and the greater part of the evidence received upon the trial related to that issue, the defendant contending that Jennings had been a consumptive for years, and must have known it.

Fifth. Dr. Oley, who examined and passed the decedent at the time he was admitted to membership in the defendant, was called as a witness for the plaintiff. On his direct examination he was asked concerning an interview between him and some of the officers of the defendant after the death of Jennings at a time when the alleged first application and medical examination, had before Dr. Banks in May, 1895, were exhibited to him. He testified that Mr. Apgar, the legal adviser and examiner of claims of the defendant, at that time asked him if, in view of the variance between the answers in the two sets of medical examination, he thought Mr. Apgar could approve, or he (Oley) could approve, of the plaintiff's claim; to which he replied, in substance, that he did not see how Mr. Apgar could, and, "I certainly could not, in face of comparison of those two sets of answers." He was permitted to explain that these answers were based upon the supposition that the first medical examination was a genuine document, and not false or fictitious. Not content with this, however, counsel for the plaintiff, on redirect examination, persisted in showing, and was permitted to show, that the witness had since changed his mind about the advisability of paying this claim, and the reasons for his change of mind on the subject; one of which was that he had since learned that there had been an investigation by the supreme officers of the defendant into the question during Jennings' lifetime, which was dropped, as being of no importance. This evidence was all received under defendant's objections and exceptions to its competency, relevancy, materiality, and that it was usurping the province of the jury.

We are of opinion that this evidence was incompetent, and that its reception constituted prejudicial error. The plaintiff's counsel, after himself drawing out the declarations of the doctor, adverse to his client, made at that interview, was permitted to show that they were made on the assumption that the first medical examination was a genuine document, which counsel for the plaintiff contested upon the trial. It was not competent for him then to place before the jury the weight and influence of the opinion of Dr. Oley in favor of the payment of this claim, and his reasons for such opinion. Sufficient

has been stated to show that this judgment cannot stand, and a new trial must be granted. There were other errors of a less serious nature committed in the reception of evidence, but on the new trial they will doubtless be obviated, and need not now be specially considered.

Sixth. We are of opinion that the case was tried upon an erroneous theory, and we deem it our duty, for the guidance of the trial court, to give expression to our views upon that subject, although upon the trial the defendant had the benefit of the erroneous rulings, and the question is not, therefore, directly presented by the appeal. Ordinarily, statements of material facts which are within the personal knowledge of an applicant for life insurance are warranties, and their falsity will defeat a recovery on the policy. Clemans v. S. A. R. S. of G. F., 131 N. Y. 485, 30 N. E. 496, 16 L. R. A. 33. But here we think that the statements contained in the application and in the answers to the questions in the medical examination were not warranties as to the facts, but were only representations that such statements were true to the best of the knowledge and belief of the applicant; or, in other words, there was no strict warranty, but merely a warranty that these statements were made honestly, without any fraudulent representation or concealment of fact. Both the application and the medical examination were on printed forms prepared by the defendant, and the rule is that they should be construed most strictly against it, and any ambiguity therein should be resolved in favor of the deceased member. Fitch v. Am. Pop. L. Ins. Co., 59 N. Y. 557, 17 Am. Rep. 372; Moulor v. Am. Life Ins. Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447. In the printed application which Jennings was required to sign, he stated, on his honor as a man, "that the statements by me subscribed herein are each and every one of them true to the best of my knowledge and belief." Then follows the statement, among other things, that he had not within six months been rejected, was not under suspension, and had never been expelled from any council of the defendant; that he was then in good health, and had no injury or disease which would tend to shorten his life; and, "I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statements, or any concealment of facts therein, or to or from the medical examiner," should forfeit his rights and those of his beneficiary. The only provision of the medical examination material on this question is at the close, and just preceding Jennings' signature, where the following appears: "I hereby warrant the truthfulness of all answers given to the above questions." The beneficiary certificate upon which the action is based declares, that both the application and medical examination form a part of the contract. In the medical examination innumerable questions are asked as to whether the applicant or certain of his relatives ever had ailments or diseases particularly specified. As to many of these it is manifest that the applicant could have no personal knowledge, and that his information would be family tradition or hearsay. The clause quoted from the medical examination, which it is claimed is a warranty of the facts, literally relates to all answers contained in the medical examination. Another rule applicable to the decision

of the question under discussion is that unless the intention of both parties to constitute answers in a medical examination warranties appears by clear, comprehensive, and unqualified language, they should be deemed representations. Fitch v. Am. Pop. L. Ins. Co., supra; Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644. It has been held that statements concerning the age of the applicant are to be regarded as warranties where there is a general provision in the contract declaring all statements to be warranties (Breeze v. Met. Life Ins. Co., 24 App. Div. 377, 48 N. Y. Supp. 753; Butler v. Supreme Council, 43 App. Div. 531, 60 N. Y. Supp. 70); but the age of an applicant is of great materiality and importance on the question of life insurance, and is a matter concerning which people generally have a definite knowledge, or the means of accurate information. A statement of age to the best of one's knowledge and belief is not a warranty, even when the applicant stipulated that if the statement were untrue it should vitiate the policy. Egan v. Supreme Council, 32 App. Div. 245, 52 N. Y. Supp. 978, affirmed 161 N. Y. 650, 57 N. E. 1109. In the case of Louis v. Connecticut Mutual L. Ins. Co., 58 App. Div. 137, 68 N. Y. Supp. 683, it was held that an answer to a general question, as to whether there was anything in the family history of the applicant that the company should know, was a mere representation. In Moulor v. American Life Ins. Co., supra, in which the facts were not distinguishable from those in the case at bar, it was held to be ordinarily a question of fact, for the determination of a jury, as to whether a disease was of such a character that its existence must have been known to the applicant, even though it were proved that he had it; and that answers that the applicant never had had certain diseases enumerated should be construed as representations that he had not had them so far as he knew. The claim in that case was that the applicant had been afflicted with scrofula, asthma, and consumption, and he had answered the questions as to whether he had had those diseases in the negative. The court say that there was evidence that he had been so afflicted, and also evidence that "at the time of his application he did not know or believe that he had ever been afflicted with any of them in a sensible, appreciable form." In Ames v. Manhattan Life Ins. Co., 40 App. Div. 465, 58 N. Y. Supp. 244, where there was an express warranty in terms as to all answers in a medical examination on application for insurance, to the effect that they were full, complete, and true, it was held that this was a warranty of the facts concerning those things only which the applicant must have known of his personal knowledge. The court say: "He only warranted those answers which reasonably bear the construction of strict warranties, and not those which on their face merely import honest representations made truthfully to the best of the applicant's knowledge, information, and belief." It was there also held that certain general questions, such as whether the applicant was in perfect health, called for "only the layman's fair and honest answer from what he knew or had reason to believe." In an exceptional case, a statement that an applicant for insurance was in sound health, where there was a warranty that the statements were "strictly correct and

wholly true," was held to be a warranty of the fact. Breeze v. Mut. Life Ins. Co., supra. The case of Fitzgerald v. Supreme Council, 39 App. Div. 251, 56 N. Y. Supp. 1005, affirmed 167 N. Y. 568, 60 N. E. 1110, is substantially to the same effect. In the construction to be placed on these answers it must be borne in mind that they were written by the medical examiner of the defendant, and are, for the most part, recorded in the affirmative or negative without any explanation. It is common knowledge that these medical examiners place their own interpretation upon an applicant's explanation of the ailments or diseases from which he has suffered. What can a layman do in answering such a question as to whether he has had dyspepsia? If he tells the medical examiner that he has had a slight attack of indigestion on one or more occasions, he will likely be informed that the object of the question is not to elicit information of a trivial character, but as to a well-settled form of the disease, and the answer would be written in the negative. This would be true of many of the questions asked. If the medical examiner erroneously records the answer, and the applicant is not aware of the fact, that would not avoid liability on the certificate, for the examiner is the agent of the assurance association or company. Ames v. Manhattan Life Ins. Co., supra; Sternaman v. Met. Life Ins. Co., 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625. In a case where an applicant for life insurance had received medical treatment for a slight indisposition from a cold, which did not confine him to the house, and he failed to disclose this in answering a question as to when he was last under a doctor's care, it was held that this did not constitute a breach of a warranty as matter of law, but was a question of fact for the jury. Genung v. Met. Life Ins. Co., 60 App. Div. 424, 429, 69 N. Y. Supp. 1041. In the case at bar the statements contained in the application are not strict warranties, for the reason that the language is, at most, ambiguous, declaring, first, that they are made according to the applicant's best knowledge and belief, and, second, that he warrants their truthfulness. The ambiguity should be resolved against the defendant. Egan v. Supreme Council, supra. Moreover, it will be observed that the applicant does not expressly warrant the facts. He merely warrants "the truthfulness of the statements." This clause, taken alone, is also ambiguous, and should be construed in favor of the applicant. The word "truthfulness" as here employed should be construed to mean, as in the preceding clause, "according to the knowledge and information possessed by the applicant." The word is susceptible of this meaning, and, since the law does not favor forfeitures, or a construction of an application and medical examination for insurance which renders the statements warranties, with harsh and inequitable results, that meaning should be applied. In Mulour v. American Life Ins. Co., supra, the court, considering a "warranty" that answers were "true," said that "true" meant "honest, sincere, not fraudulent."

We are also of opinion that the application and medical examination should be construed together and alike. As has been seen, in the medical examination there is no express reference to the application, but in the application there is an express reference to the medical

examination; and the applicant is required to "consent and agree that any untrue or fraudulent statements, or any concealment of facts therein (meaning in the application), or to or from the medical examiner," should work a forfeiture of all rights under the beneficiary certificate. It is clear, we think, in view of this clause, that the answers contained in the medical examination are to be construed as warranties of the facts, or as representations, according as we construe the application. It seems plain from the language employed that what the defendant led the applicant to believe it desired was an honest disclosure of his knowledge on the subjects to which the questions related. Furthermore, it will be observed that in the clause at the close of the medical examination, which the defendant contends is a warranty, there is no express warranty of the facts. There, as in the application, Jennings merely warranted "the truthfulness" of the answers.

The case of Foley v. Royal Arcanum, 78 Hun, 222, 28 N. Y. Supp. 952, 151 N. Y. 196, 45 N. E. 456, 56 Am. St. Rep. 621, is distinguishable in that there an express warranty of the truthfulness of the statements was not qualified, as here, by a clause showing that the warranty was intended to be that they were true to the best of the knowledge and belief of the applicant. Moreover, as shown by the opinion at General Term, it was immaterial whether they were warranties or representations, for the applicant knew he had the diseases and had been treated therefor.

For the reasons stated, the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON, J., concur. HATCH, J., concurs in the first, fourth, and sixth propositions discussed in this opinion. INGRAHAM, J., concurs in result.